Robert L. Richmond
Marc G. Wilhelm
Richmond & Quinn, PC
360 K Street, Suite 200
Anchorage, Alaska 99501
Phone: (907) 276-5727
Fax: (907) 276-2953
brichmond@richmondquinn.com
mwilhelm@richmondquinn.com

Attorneys for Plaintiff
Wild Alaska Salmon & Seafood, Inc.

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| WILD ALASKA SALMON AND SEAFOOD, INC., <br><br> Plaintiff, <br><br> v. <br><br> WILD ALASKAN, INC. and ARRON KALLENBERG, <br><br> Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br><br> Civil Action No. 3:20-cv-_____- |

Plaintiff Wild Alaska Salmon and Seafood, Inc. ("Wild Alaska") states as follows for its Complaint against Defendant Wild Alaskan, Inc. ("WAI") and Arron Kallenberg ("Kallenberg") (collectively "Defendants"):

### NATURE OF THE ACTION

1.     This is an action for trademark infringement and unfair competition under Federal and state law, including for Defendants' infringement of Wild Alaska's trademarks WILD ALASKA and WILD ALASKA SALMON & SEAFOOD COMPANY.

2.      Wild Alaska brings this action to prevent and halt consumer confusion and mistake as to the source, affiliation or sponsorship of Wild Alaska and its goods and services, on the one hand, and WAI and its goods and services, on the other hand, stemming from WAI's and Kallenberg's infringement of Wild Alaska's trademark rights.

3.      Wild Alaska seeks both injunctive and monetary relief for WAI's and Kallenberg's efforts to wrongly profit and otherwise benefit from the goodwill Wild Alaska has established in Wild Alaska's trademarks.

## THE PARTIES

4.      Wild Alaska is a corporation organized under the laws of the state of Oregon with its principal place of business in King Salmon, Alaska.

5.      WAI is a corporation organized under the laws of the state of New York with its principal place of business in Brooklyn, New York.

6.      Upon information and belief, Kallenberg is an individual who is a citizen of the state of New York.

7.      Upon information and belief, Kallenberg created WAI on or around September 21, 2017.

8.      Upon information and belief, and as shown in the following WAI webpage, Kallenberg is the Chief Executive Officer, founder, and driving force of WAI and its sales in the United States.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 2 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 2 of 38



9.      On information and belief, Kallenberg owns and controls the actions of WAI.

## JURISDICTION AND VENUE

10.      Wild Alaska's claims are based primarily on the Lanham Act, 15 U.S.C. § 1051 et seq., and it has substantial and related claims under the statutory and common law of the state of Alaska.

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338, and 15 U.S.C. § 1121, and has supplemental jurisdiction over claims brought under Alaska state law pursuant to 28 U.S.C. § 1367.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District,

and a substantial part of the property that is the subject of the action is situated in this District.

13.     Personal jurisdiction is proper in this Court in part because WAI and Kallenberg regularly conduct business, directly and indirectly, within the state of Alaska.

14.     WAI's and Kallenberg's unlawful acts that are the subject of this Complaint include acts that were purposefully directed towards the state of Alaska and within this District, and WAI's goods and services are regularly purchased from within and offered to consumers in this District.

15.     Upon information and belief, WAI purposefully directs its acts toward, and has provided its goods and services in, every state in the United States, as demonstrated in the following WAI webpages.

//
//
//
//
//
//
//
//
//
//
//
//
//

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 4 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 4 of 38

screenshot-wildalaskancompany.com-2020.03.31-16_59_56
https://wildalaskancompany.com/reviews-and-testimonials
31.03.2020



HOW IT WORKS   PRICING   REVIEWS   OUR STORY

JOIN TODAY      LOGIN

## What People Have to Say About Us

We're on a mission to accelerate humanity's transition to sustainable food systems. And along the way, we're
committed to helping our members feel confident and great about their next seafood creation.

RECENTLY FEATURED IN

Forbes      Reader's      epicurious      BUSINESS
            digest                         INSIDER



JOHN C.

CALIFORNIA



The quality of the fish is top shelf. My wife and I have
enjoyed both fish dinners. Finding your fish service
came at an opportune time. We just decided to eat
more fish (shooting for twice a week) and more of a
Mediterranean diet. This delicious fish is making it
easy. 4 thumbs up from me and my wife.

JOHN C. ⬤ | CALIFORNIA



We have enjoyed a couple of meals with your fantastic
fish. I especially appreciated how the packing was so
environmentally friendly. We were even able to
recycle the leftover dry ice by giving it to a science
class to show what dry ice can be. I see us



chrome-extension://bpconcjcammlapcogcnnelfmaeghhagj/edit.html                                          1/4

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 5 of 38



enjoying your seafood for a long time.

**SUSAN K.** ✔ | MINNESOTA

## Ready to Start?

Signing up is super fast and simple.

[ CHOOSE A PLAN ]



**NANCY I.** ✔
NEVADA
★★★★★

### Never liked fish until yours

I just wanted to let you know that I have never really liked fish until I tried yours. Each variety has been incredibly fresh and clean. Now, thanks to you guys, I'm giving up red meat completely.

**JOAN H.** ✔
WISCONSIN
★★★★★

### No contest!

We prepared two pieces of Wild Alaskan salmon as well as Alaskan salmon that was similarly marketed at our local grocery store - just to compare. This was no contest! Your salmon was SOOOOOOO.....delicious!

**SUZANNE L.** ✔
INDIANA
★★★★★

### Ethical and healthy

We have greatly enjoyed our fish. It tastes better than anything I have been able to buy in Indiana no matter what kind of market I shop at. Ethical business and healthy food are worth supporting every day.





"Fish may be one of the trickier items to ship fresh (we shiver to think of that package being left on your doorstep all day), but businesses like Wild Alaskan Company have nailed the process." Read more

**epicurious**

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 6 of 38

16.     Personal jurisdiction and venue are also proper in this Court because WAI and Kallenberg advertise, sell, and provide WAI infringing goods and services in the state of Alaska and in this District, which activity is the subject of this litigation.

## FACTUAL ALLEGATIONS

### Wild Alaska and its Trade Name and Trademarks

17.     Since its founding in 2000, Wild Alaska has been dedicated to bringing the fabulous taste and health benefits of fresh, wild-caught salmon from the crystal-clear waters of Bristol Bay, Alaska to consumers throughout the United States.

18.     Since at least as early as 2006, Wild Alaska has been selling direct to consumers throughout the United States.

19.     An important aspect of Wild Alaska's business model is that Wild Alaska employees catch the very salmon that the company sells.

20.     As Wild Alaska catches salmon on a daily basis, the salmon is delivered on ice to shore straight from Wild Alaska's boat where the salmon is at once cleaned and hand-processed by Wild Alaska's own processing team in what is called a "wet process."

21.     Wild Alaska is known in the industry and by consumers for its business model and focus on providing the freshest wild-caught salmon and other seafood products sold direct to consumers.

22.     Through significant time, expense, and effort, Wild Alaska has earned the highest reputation for quality among wholesale and retail consumers of seafood and seafood related sales services.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 7 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 7 of 38

23.     Wild Alaska provides its seafood and seafood related sales services throughout the United States.

24.     Since at least as early as 2002, Wild Alaska continuously has used the trade name WILD ALASKA or WILD ALASKA SALMON & SEAFOOD COMPANY (the "Trade Name") in association with Wild Alaska's business activities – including without limitation forming business relationships and entering into contracts with third parties in relation to its business operations.

25.     Since at least as early as 2002, Wild Alaska continuously has used the marks WILD ALASKA and WILD ALASKA SALMON & SEAFOOD COMPANY, or substantially similar variations, on labels, tags and other materials in association with seafood and seafood related sales services, including without limitation the following forms:



(collectively, the "Wild Alaska Marks").

26.     Wild Alaska has also used its Trade Name and the Wild Alaska Marks in advertising for seafood and seafood related sales services sold and provided throughout the United States.

27.    Following are examples showing Wild Alaska's use of its Trade Name and the Wild Alaska Marks in association with Wild Alaska's seafood and seafood related sales services sold and provided throughout the United States:





COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 9 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 9 of 38

28.     Wild Alaska's use of its Trade Name and the Wild Alaska Marks in association with Wild Alaska's seafood and seafood related sales services has created strong source identifying significance in the minds of consumers throughout the United States.

29.     Consumers understand that use of its Trade Name and the Wild Alaska Marks in association with seafood and seafood related sales services signifies that those goods and services are sourced, affiliated, or sponsored by Wild Alaska.

30.     Other seafood industry entities in Alaska and elsewhere, including seafood producers, processors and fishing related goods and services providers, also understand that the Trade Name identifies Wild Alaska as a going business.

31.     Wild Alaska purchases goods and services from these entities under and through the Trade Name.

32.     Wild Alaska enjoys a good reputation and significant goodwill with these entities, and generally in the seafood industry, by virtue of its business interactions with these entities. That reputation and goodwill is part and parcel of, and gives significant value to, the Trade Name.

33.     The following image obtained from Wild Alaska's website located at <wildalaskasalmonandseafood.com> (the "Genuine Website") is representative of Wild Alaska's prominent use of its Trade Name and the Wild Alaska Marks in association with seafood and seafood related sales services:



34.     Wild Alaska's longstanding use of its Trade Name and the Wild Alaska

Marks has made them strong, widely recognized, and highly distinctive in association with

seafood and seafood related sales services.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 11 of 38

Case 3:20-cv-00094-JWS    Document 1    Filed 04/23/20    Page 11 of 38

35. Wild Alaska's Trade Name and the Wild Alaska Marks are very valuable assets that belong to Wild Alaska.

36. Wild Alaska has enjoyed tremendous success providing seafood and seafood related sales services advertised and sold in association with its Trade Name and the Wild Alaska Marks in the United States.

37. Wild Alaska has enjoyed tens of millions of dollars of seafood sales, and provided associated seafood sale services, in the United States in the approximately eighteen years that Wild Alaska has been providing such under the Trade Name and Wild Alaska Marks.

**WAI'S and Kallenberg's Acts of Infringement and Unfair Competition**

38. WAI and Kallenberg are well familiar with Wild Alaska, Wild Alaska's business model, the Trade Name, and the Wild Alaska Marks that Wild Alaska uses in association with seafood and seafood related sales services.

39. Indeed, Kallenberg contacted Wild Alaska owner Tony Wood ("Wood"), in approximately 2016 in an effort to purchase salmon from Wild Alaska – for resale under WAI's name.

40. Kallenberg also visited Wild Alaska's processing plant in Naknek, Alaska several times during the summer fishing season in approximately 2016.

41. In the course of these and other activities, Kallenberg became well familiar with Wild Alaska, the Trade Name, and the Wild Alaska Marks in use at the time, along

with the success Wild Alaska had attained in direct marketing its seafood and related seafood sales services to consumers through the Internet and the Genuine Website.

42.    Ultimately, Kallenberg decided to try to mimic, piggy back, and free ride on the success and goodwill enjoyed by Wild Alaska due to its business model, Trade Name, Wild Alaska Marks, and the Genuine Website.

43.    However, despite WAI's and Kallenberg's efforts to copy Wild Alaska, still only Wild Alaska truly catches its own salmon, processes such itself, and then directly sells such seafood through the Internet.

44.    WAI and Kallenberg have unlawfully used Wild Alaska's Trade Name and Wild Alaska Marks, or confusingly similar iterations thereof, without authorization from Wild Alaska.

45.    As an example, the following images obtained from WAI's website located at <wildalaskancompany.com> (the "Infringing Website") is representative of WAI's prominent use of WILD ALASKAN COMPANY,  , and

(collectively, the "Infringing Uses"), as well as the trade name WILD ALASKAN COMPANY (the "Infringing Name"), in association with seafood and seafood related sales services that are confusingly similar to Wild Alaska's Trade Name and Wild Alaska Marks.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 13 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 13 of 38

screenshot-wildalaskancompany.com-2020.04.01-11_38_03
https://wildalaskancompany.com/home
01.04.2020



HOW IT WORKS   PRICING   REVIEWS   OUR STORY          JOIN TODAY   LOGIN



Wild-Caught Seafood                                  Sustainably-Harvested

NEVER Farmed or                                      Flash Frozen &
Genetically Modified                                 Shipped with Dry Ice

No Antibiotics                                        Ready-to-Cook

Perfectly Sized                                      Caught & Processed
Portions                                             in the USA



COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 14 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 14 of 38

46.     The following image shows WAI's product packaging and use of the Infringing Uses and Infringing Name in the course of providing seafood and seafood related sales services.



47.     Upon information and belief, WAI started using the Infringing Uses and Infringing Name in the United States sometime in 2017, many years after Wild Alaska first commenced use of the Trade Name and Wild Alaska Marks in the United States.

48.     Wild Alaska and WAI compete in the marketplace for the same consumers of seafood and seafood related sales services in the United States.

49.    Upon information and belief, WAI advertises and sells seafood and seafood related sales services under the Infringing Uses and Infringing Name throughout the United States, including the State of Alaska.

50.    As shown in the following image, WAI'S use of the Infringing Uses and Infringing Name extends to third party marketplaces as well, such as Facebook, where (as hoped and intended by WAI and Kallenberg) consumers refer to and identify WAI as "Wild Alaskan".



51.    As stated on the Infringing Website, Kallenberg previously enjoyed a career in software engineering and worked at several internet startups over the course of fifteen years.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 16 of 38

Case 3:20-cv-00094-JWS    Document 1    Filed 04/23/20    Page 16 of 38

screenshot-wildalaskancompany.com-2020.04.08-14_58_45
https://wildalaskancompany.com/our-story
08.04.2020

52.     On information and belief, WAI and Kallenberg are now applying that experience and knowledge in software engineering to create consumer confusion, including initial interest confusion, with Wild Alaska and otherwise to drive internet traffic to the Infringing Website as opposed to the Genuine Website, including through use of an "Affiliate Program" with an entity named "AvantLink" as shown in the following image.

//

//

//

//

//

//

//

//

//

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 17 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 17 of 38

screenshot-www.avantlink.com-2020.03.10-10_31_47
https://www.avantlink.com/programs/17385/wild-alaskan-company-affiliate-program
10.03.2020



53.     As shown above, of all the myriad trade name and trademark choices
available to WAI:

- WAI chose to use the literal elements WILD ALASKAN COMPANY
  SEAFOOD & PROVISIONS (when Wild Alaska was already using WILD
  ALASKA and WILD ALASKA SALMON & SEAFOOD COMPANY);

- WAI chose to use a blue color scheme for its trademarks and product
  packaging (when Wild Alaska was already using a blue color scheme for its
  trademarks and product packaging);

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 18 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 18 of 38

- WAI chose to use a circular badge design featuring concentric circles and



  wrapping literal elements                    (when Wild Alaska was already

  using a circular badge design featuring concentric circles and wrapping



  literal elements                    as one of the Wild Alaska Marks); and,

- WAI chose to use a customer service representative named "Josh" for

  communications with consumers (when Wild Alaska was already using a

  customer service representative named "Josh" for communications with

  consumers).

54.     On information and belief, WAI and Kallenberg took these actions in an

effort and with the purpose to free ride off the goodwill and consumer recognition of Wild

Alaska's Trade Name, and Wild Alaska Marks.

55.     WAI and Kallenberg took all these actions knowing Wild Alaska enjoys

valid trademark rights in the Trade Name and Wild Alaska Marks.

56.     By mimicking Wild Alaska's Trade Name and Wild Alaska Marks, WAI's

own conduct demonstrates the goodwill and consumer recognition established through

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 19 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 19 of 38

Wild Alaska's use of its Trade Name and Wild Alaska Marks in association with seafood and seafood related sales services.

57.     WAI further admits its own wrongdoing by seeking to prohibit others from doing to it what it is doing here to Wild Alaska.  For example, as shown in the following image from the Infringing Website, WAI claims (falsely) that WAI owns valid trademark rights in the marks "Wild Alaska", "Wild Alaskan Company", and the "look and feel of the Sites and Products", and WAI goes so far as to state these "may not be copied, imitated or used, in whole or in part, without prior written permission":



And, as shown above, WAI also seeks to prohibit use of "any metatags or other 'hidden text' utilizing "Wild Alaskan" or any other name, trademark or Product or service name of Wild Alaskan without prior written permission."

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 20 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 20 of 38

58.     Upon information and belief, WAI and Kallenberg are intentionally engaged in activity that WAI and Kallenberg know is unlawful and constitutes unfair competition, including trademark infringement.

59.     Upon information and belief, WAI and Kallenberg targeted Wild Alaska to create consumer confusion or mistake that has harmed both consumers and Wild Alaska.

60.     WAI and Kallenberg's actions have given rise to actual consumer confusion, including the consumer confusion (including disgust and ill will) demonstrated in the following consumer communications that were intended to relate to WAI and WAI's business practices, but were erroneously directed to Wild Alaska.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 21 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 21 of 38



COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 22 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 22 of 38



COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 23 of 38



NOT a middleman. We are the fisherman, processor and seller of our own 100% wild caught Alaskan salmon and seafood. We fish the Naknek region of Bristol Bay, AK which is about 300 miles SW of Anchorage. If you'd like to discuss this issue in more detail, please contact us directly at info@wildalaskasalmonandseafood.com. Thanks.

**Sam**
6 reviews

★☆☆☆☆　　　　　　　　　　　　　　Updated Oct 28, 2019

**This company uses spam to market**

This company uses spam to market their web site. Do not patronize them.

👍 Useful 1　  Share

→ Reply from Wild Alaska Salmon & Seafood　　Nov 20, 2019

Hi Sam, I'm sorry but you reviewed the wrong company! We DO NOT use spam of any kind to market our website. The company you meant to review is Wild Alaskan Company. Similar name, but totally different company. If you'd like to discuss this issue in more detail, please reach out to us directly at info@wildalaskasalmonandseafood.com. Thanks

**a ka**
1 review

★☆☆☆☆　　　　　　　　　　　　　　Oct 27, 2019

**Untrustworthy email spammer!!! - Tries to win business via marketing instead of quality product!**

I am completely turned off by your company and your marketing tactics and will at this point actively warn people from buying from you. I had never heard of your company before my email got flooded with your unsolicited offers for weeks now. Each time they come from another marketing spammer email to successfully evade previously set up filters. If you unsubscribe your email, you are just confirming your contact to a shady marketing company's list as an active email to be sold to others and invite even more spam.This is beyond annoying. If your company 'Wild Alaska Salmon & Seafood' figures it can get enough incremental additional business to not care about the vast majority of people you are spamming with your emails, it very much shows your business ethics and lack of a product being successful due to its quality rather than excessive and truly desperate marketing efforts. No trust worthy company needs to use tactics like this. Would you stop already?

👍 Useful 2　  Share

→ Reply from Wild Alaska Salmon & Seafood　　Nov 20, 2019

Hi ka, I'm sorry but you've reviewed the wrong company! We DO NOT use any kind of spam for our marketing efforts. The company you meant to review is Wild Alaskan Company. Similar name, totally different company. If you would like to discuss this issue in more detail, please contact us directly at info@wildalaskasalmonandseafood.com. Thanks.

**Sandra P**
2 reviews

★★★★★　　　　　　　　　　　　　　Aug 10, 2019

**We just bbqd salmon from our first...**

We just bbqd salmon from our first order. Very tasty... Excellent flavor.

👍 Useful　  Share

Advertisement

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 24 of 38

**Google Reviews:**



c d
★☆☆☆☆ 1 week ago

I don't eat seafood - never signed up with their web site - still keep receiving their spam e-mails. They use different junk domain names to get past your domain filters.

Wild Alaska Salmon & Seafood (owner)
1 week ago

*Hi c d, thank you very much for your review. However, I think you may have reviewed the wrong company! We are Wild Alaska Salmon & Seafood (NOT Wild Alaskan Company) and we do not spam ANY of our subscribers or past customers. Please check the domain name where your emails are coming from and let us know what you find. We can be reached directly at info@wildalaskasalmonandseafood.com (our domain name). Thank you again!*

Edit   Delete

Bob Rennick
★☆☆☆☆ 37 weeks ago

Received my first shipment and the ice was gone and the fish was beginning to thaw out. It was a cold day here too...... More

Wild Alaska Salmon & Seafood (owner)
37 weeks ago

*Hi Bob, thank you very much for your feedback! However, we believe you have reviewed the wrong company! We have checked your entire order history and we have no order under your name. Also, we would NEVER have denied you a refund if something was not right with your order! We DO stand behind our products 100% so we ALWAYS try and make it right with our customers, period, either through a refund or a reshipment! You can reach us directly at info@wildalaskasalmonandseafood.com and we can discuss your issue in more detail. Thank you again.*

Edit   Delete

Dick Kasnick
★★☆☆☆ 10 weeks ago

I ordered 5 lbs of salmon and 5 lbs of tuna. I thought that would qualify me for the 10 lb discount, but no, nothing.... More

Wild Alaska Salmon & Seafood (owner)
10 weeks ago

*Hi Dick, thank you so much for your review. However, I've looked back through our entire order history and I cannot find any order from you. Was the order placed under another name? Are you sure you are reviewing the correct company? We are Wild Alaska Salmon & Seafood and if you did indeed place your order with us, first, we would have DEFINITELY responded to your emails. And second, you would certainly have qualified for a discount. Please reach out to us directly at info@wildalaskasalmonandseafood.com and we can look into this issue more thoroughly. Thank you again!*

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 25 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 25 of 38

61.     WAI continues to use the Infringing Name and Infringing Uses in the United States in connection with seafood and seafood related sales services in the United States.

62.     The natural, probable, foreseeable and actual result of WAI's and Kallenberg's wrongful conduct is to cause consumer confusion, deception, and mistake in the marketplace, to harm Wild Alaska's business reputation and goodwill, and injure Wild Alaska's relationships with existing and prospective consumers.

63.     Upon information and belief, WAI's and Kallenberg's wrongful conduct has resulted in increased sales of WAI seafood and seafood related sales services while hindering the sales of Wild Alaska's seafood and seafood related sales services.

64.     Wild Alaska has sustained, and will continue to sustain, damages as a result of WAI's and Kallenberg's wrongful conduct.

65.     Upon information and belief, WAI and Kallenberg are aware of Wild Alaska's Trade Name and the Wild Alaska Marks, and the goodwill associated therewith, and are aware that they cannot lawfully use the Infringing Name or the Infringing Uses as a trade name or as a source indicator for WAI's seafood and seafood related sales services, yet are proceeding to attempt such anyhow.

66.     As an individual with direct contact and familiarity with Wild Alaska well before the founding of WAI, Kallenberg has had exposure to Wild Alaska's seafood and seafood related sales services, Wild Alaska's intellectual property, and the goodwill Wild Alaska has created in the Trade Name and Wild Alaska Marks through Wild Alaska's use of those marks in association with seafood and seafood related sales services.

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 26 of 38

67.    Upon information and belief, WAI and Kallenberg have engaged in these unlawful activities knowingly and intentionally, and with reckless disregard for Wild Alaska's rights in its Trade Name and Wild Alaska Marks.

## COUNT I - FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP (15 U.S.C. § 1125(a))

68.    Wild Alaska incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

69.    Wild Alaska's Trade Name and the Wild Alaska Marks are well-established and serve to identify the seafood and seafood related sales services sourced, affiliated, sponsored, approved, authorized, or otherwise associated by or with Wild Alaska and are exclusively for the use of Wild Alaska.

70.    WAI and Kallenberg have knowingly used and continue to use colorable imitations of Wild Alaska's Trade Name and the Wild Alaska Marks in connection with the seafood and seafood related sales services that WAI and Kallenberg advertise, promote, and sell. WAI'S and Kallenberg's actions render this case exceptional within the meaning of 15 U.S.C. §1117(a).

71.    Upon information and belief, prior to WAI'S and Kallenberg's use of the Infringing Name and Infringing Uses, WAI and Kallenberg had actual knowledge of Wild Alaska's use and ownership of the Trade Name and the Wild Alaska Marks in connection with Wild Alaska's seafood and seafood related sales services.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 27 of 38

Case 3:20-cv-00094-JWS    Document 1    Filed 04/23/20    Page 27 of 38

72.    Upon information and belief, WAI and Kallenberg have used and continue to use the Infringing Name and Infringing Uses in association with seafood and seafood related sales services in a manner that is likely to confuse, mislead, or deceive consumers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of WAI and WAI's goods and services, and is likely to cause consumers erroneously to believe that WAI's goods and services have been authorized, sponsored, approved, endorsed, or licensed by Wild Alaska or that WAI and Kallenberg are affiliated with Wild Alaska.

73.    WAI's and Kallenberg's use of the Infringing Name and Infringing Uses in association with seafood and seafood related sales services constitutes false designation of origin and/or sponsorship and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.    As a direct and proximate result of WAI'S and Kallenberg's actions, Wild Alaska has suffered and will continue to suffer irreparable harm to Wild Alaska's valuable Trade Name, Wild Alaska Marks, and Wild Alaska's business, goodwill, reputation and profits.

75.    Wild Alaska will continue to be irreparably harmed unless WAI and Kallenberg are restrained from further infringement of Wild Alaska's valuable Trade Name and Wild Alaska Marks.

76.    An award of monetary damages alone cannot fully compensate Wild Alaska for its injuries, and Wild Alaska lacks a fully adequate remedy at law.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 28 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 28 of 38

77. The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

78. Wild Alaska is entitled to a permanent injunction against WAI and Kallenberg, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

## COUNT II – STATE COMMON LAW TRADEMARK INFRINGEMENT

79. Wild Alaska incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

80. Wild Alaska has used the Trade Name and Wild Alaska Marks to sell seafood and seafood related sales services for many years, some of which use started at least as early as 2002.

81. Wild Alaska's Trade Name and Wild Alaska Marks have become widely known throughout the United States, including Alaska, and consumers have come to identify Wild Alaska as the exclusive source of the seafood and seafood related sales services to which they are applied.

82. The Trade Name and Wild Alaska Marks are or have become distinctive.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 29 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 29 of 38

83.     WAI and Kallenberg continue to advertise, promote, and sell goods using the Trade Name and Wild Alaska Marks or colorable imitations thereof, with knowledge of and with intentional disregard of Wild Alaska's rights.

84.     Such acts by WAI and Kallenberg have caused and continue to cause confusion as to the source, affiliation, and/or sponsorship of seafood and seafood related sales services.

85.     WAI'S and Kallenberg's acts constitute willful infringement of Wild Alaska's exclusive rights in the Trade Name and Wild Alaska Marks in violation of the common law of the State of Alaska and other states.

86.     As a direct and proximate result of WAI'S and Kallenberg's conduct, Wild Alaska has suffered irreparable harm to Wild Alaska's valuable Trade Name and Wild Alaska Marks.

87.     Wild Alaska will continue to be irreparably harmed unless WAI and Kallenberg are restrained from further infringement of Wild Alaska's Trade Name and Wild Alaska Marks.

88.     An award of monetary damages alone cannot fully compensate Wild Alaska for its injuries, and Wild Alaska lacks a fully adequate remedy at law.


### COUNT III – STATE COMMON LAW UNFAIR COMPETITION

89.     Wild Alaska incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 30 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 30 of 38

90.     WAI and Kallenberg have engaged in unfair competition under the common law of the State of Alaska and other states based on its acts as alleged in this Complaint.

91.     WAI and Kallenberg are liable to Wild Alaska for unfair competition under the common law of the State of Alaska and other states.

92.     Upon information and belief, WAI's and Kallenberg's acts alleged in this Complaint were willful and intended to cause confusion, mistake, or deception.

93.     As a direct and proximate cause of WAI's and Kallenberg's conduct, Wild Alaska has suffered, is suffering, and will continue to suffer irreparable damages in an amount to be proved at trial.

94.     An award of monetary damages alone cannot fully compensate Wild Alaska for its injuries, and Wild Alaska lacks a fully adequate remedy at law.


**COUNT IV – VIOLATION OF ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STATUTORY LAW)**

95.     Wild Alaska incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

96.     WAI's and Kallenberg's sale of WAI products constitutes "trade or commerce" as that term is used in the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471 *et seq.*

97.     WAI's and Kallenberg's actions as alleged in this Complaint constitute "unfair methods of competition" and "unfair or deceptive acts or practices" within the

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 31 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 31 of 38

meaning of the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471 *et seq.*

98.    WAI's and Kallenberg's actions as alleged in this Complaint constitute "fraudulently conveying or transferring goods or services by representing them to be those of another." Alaska Stat. § 45.50.471(b)(1).

99.    WAI's and Kallenberg's actions as alleged in this Complaint constitute "causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services." Alaska Stat. § 45.50.471(b)(3).

100.    WAI's and Kallenberg's actions as alleged in this Complaint constitute "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have." Alaska Stat. § 45.50.471(b)(4).

101.    WAI's and Kallenberg's actions as alleged in this Complaint constitute "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services." Alaska Stat. § 45.50.471(b)(11).

102.    Wild Alaska has suffered and continues to suffer actual harm as a direct and proximate result of WAI's and Kallenberg's actions.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 32 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 32 of 38

103. Wild Alaska has suffered and continues to suffer irreparable harm as a direct and proximate result of WAI's and Kallenberg's actions.

104. An award of monetary damages alone cannot fully compensate Wild Alaska for its injuries, and Wild Alaska lacks a fully adequate remedy at law.


## PRAYER FOR RELIEF

WHEREFORE, Wild Alaska prays for judgment against WAI and Kallenberg as follows:

1. A determination that WAI and Kallenberg have violated 15 U.S.C. § 1125(a), that Wild Alaska has been damaged by such violations, and that the WAI and Kallenberg are liable to Wild Alaska for such violations;

2. A determination that WAI and Kallenberg have committed common law trademark infringement, that Wild Alaska has been damaged by such infringement, and that WAI and Kallenberg are liable to Wild Alaska for common law trademark infringement;

3. A determination that the WAI and Kallenberg have committed common law unfair competition, that Wild Alaska has been damaged by such unfair competition, and that WAI and Kallenberg are liable to Wild Alaska for common law unfair competition;

4. A determination that WAI and Kallenberg have violated the Alaska Unfair Trade Practices and Consumer Protection Act, and an award of all damages, including

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 33 of 38

costs, reasonable attorneys' fees, and punitive damages as authorized by the Alaska Unfair Trade Practices and Consumer Protection Act;

5.      A determination that this case is "exceptional," in the sense of 15 U.S.C. § 1117(a);

6.      For an award of Wild Alaska's damages arising out of WAI's and Kallenberg's acts;

7.      Under all claims for relief, that an injunction be issued enjoining WAI, Kallenberg, and their respective employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from;

> (a) imitating, copying, or making any unauthorized use of Wild Alaska's Trade Name and Wild Alaska Marks;
>
> (b) importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of Wild Alaska's Trade Name and Wild Alaska Marks;
>
> (c) using any false designation of origin or false description or performing any act which is likely to lead members of the trade or public to believe that any service or product manufactured, distributed or sold by WAI or Kallenberg is in any manner associated or connected with Wild Alaska or is sold, manufactured, licensed, sponsored, approved or authorized by Wild Alaska;
>
> (d) engaging in any other activity constituting unfair competition with Wild Alaska, or acts and practices that deceive the public and/or the trade;

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 34 of 38

8.      For an Order directing that WAI and Kallenberg deliver for destruction all products, labels, badging, tags, signs, prints, packages, videos, and advertisements in WAI's and Kallenberg's possession or under WAI's and Kallenberg's control, bearing or using Wild Alaska's Trade Name and/or Wild Alaska Marks, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118;

9.      For an Order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by WAI and Kallenberg is authorized by Wild Alaska or related in any way to the Wild Alaska's seafood and seafood related sales services, including but not limited to use of search engine optimization technology and other technology that would circumvent the Orders requested in this Complaint;

10.     For an Order directing WAI, Kallenberg, and their respective agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, to file with this Court, and serve upon Wild Alaska's counsel within thirty (30) days after entry of such judgment, a written report under oath, setting in detail the manner and form in which they have complied with such judgment;

11.     For an Order permitting Wild Alaska, and/or auditors of Wild Alaska, to audit and inspect the books, records, and premises of WAI and Kallenberg and related entities for a period of six (6) months after entry of final relief in this matter, to determine

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 35 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 35 of 38

the scope of the WAI's and Kallenberg's past use of Wild Alaska's intellectual property, including all manufacturing, distribution, and sales of products bearing Wild Alaska's Trade Name and Wild Alaska Marks, as well as WAI's and Kallenberg's compliance with the orders of this Court;

12. For an award of WAI's and Kallenberg's profits realized by WAI's and Kallenberg's wrongful acts, and directing that such profits be trebled, pursuant to 15 U.S.C. § 1117 and Alaska law;

13. For an award of Wild Alaska's actual damages, and directing that such damages be trebled, pursuant to 15 U.S.C. § 1117 and Alaska law;

14. For an award of statutory damages to Wild Alaska pursuant to 15 U.S.C. § 1117;

15. For an award of Wild Alaska's attorneys' fees, costs and disbursements incurred in this action pursuant to 15 U.S.C. § 1117 and Alaska law;

16. For an Order requiring WAI and Kallenberg to file with the Court and provide to Wild Alaska an accounting of all sales and profits realized by WAI and Kallenberg through the use of Wild Alaska's Trade Name, Wild Alaska Marks, and trade dress and any counterfeits, reproductions, copies, or colorable imitations thereof;

17. For an order requiring WAI and Kallenberg to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of WAI's seafood and seafood related sales services, or Wild Alaska's seafood and seafood

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 36 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 36 of 38

related sales services, including without limitation, an award or other placement of corrective advertising providing written notice to the public;

18.     For an award of interest, including pre-judgment and post-judgement interest on the foregoing sums; and

19.     For an award of such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Wild Alaska respectfully demands a jury trial of all issues triable by jury.

//

//

//

//

//

//

//

//

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 37 of 38

RICHMOND & QUINN

By: /s/ _____
Robert Richmond
Alaska Bar No. 7011069
360 K St #200
Anchorage, AK 99501
T: (907) 276-5727
F: (907) 276-2953
Email: brichmond@richmondquinn.com

By: /s/ _____
Marc G. Wilhelm
Alaska Bar No. 8406054
360 K St #200
Anchorage, AK 99501
T: (907) 276-5727
F: (907) 276-2953
Email: mwilhelm@richmondqinn.com


DENTONS BINGHAM GREENEBAUM LLP

James M. Hinshaw
(*pro hac vice motion to be filed*)
*james.hinshaw@dentons.com*

Brad R. Maurer
(*pro hac vice motion to be filed*)
*brad.maurer@dentons.com*

Andrew J. Pendexter
(*pro hac vice motion to be filed*)
*Andrew.pendexter@dentons.com*

10 West Market Street
2700 Market Tower
Indianapolis, IN 46204
(317) 968-5385

Counsel for Plaintiff
Wild Alaska Salmon and Seafood, Inc.

COMPLAINT
*Wild Alaska Salmon & Seafood, Inc. v. Wild Alaskan, Inc. et al.*; Case No. 3:20-cv-_____
Page 38 of 38

Case 3:20-cv-00094-JWS   Document 1   Filed 04/23/20   Page 38 of 38